UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

ANNABELLA OJEDA,

                       Plaintiff,                          21-CV-5775 (RA) (KNF)

   -against-                                       **SECOND AMENDED**
                                                     **COMPLAINT**

THE CITY OF NEW YORK, PRECIOUS           **JURY TRIAL DEMANDED**
CUMMINGS, GENESIS NOVA-DIAZ, EDWIN
REYES-ESTRADA, ELLIOT ZINSTEIN, and
BRIAN QUERY,

                       Defendants.
----------------------------------------------------------------X

Plaintiff Annabella Ojeda ("Plaintiff" or "Ojeda"), as and for her complaint against defendants City of New York, Precious Cummings, Genesis Nova-Diaz, Edwin Reyes-Estrada, Elliot Zinstein, Brian Query, Police Officers John Does ##4-28, and Jane Doe #2, alleges as follows upon information and belief:

1. This action seeks to vindicate plaintiff's constitutional and common law rights which were violated on or about June 15-16, 2020, when she was arrested and taken into custody purportedly because she, and other workers at a Shake Shack in Lower Manhattan, had "poisoned" police officers with tainted milkshakes. The officers who arrested Ojeda and four other persons lacked probable cause – or any basis whatsoever – for their actions. Their purported claim that Ojeda and/or others had "poisoned" police officers was utterly absurd, and was revealed to be baseless in the days following her arrest. Plaintiff now seeks redress for these violations of her rights.

## PARTIES

2. Plaintiff Annabella Ojeda is twenty-two (22) years of age and resides in the borough of Brooklyn, City of New York.

3. Defendant City of New York (hereafter the "City") is a municipal corporation organized and existing under the laws of the State of New York.

4. Defendant Precious Cummings was at all relevant times employed by the City as a police officer, and is sued in her individual and official capacities.

5. Defendant Genesis Nova-Diaz was at all relevant times employed by the City as a police officer, and is sued in her individual and official capacities.

6. Defendant Edwin Reyes-Estrada was at all relevant times employed by the City as a police officer, and is sued in his individual and official capacities.

7. Defendant Elliot Zinstein was at all relevant times employed by the City as a police officer with the rank of sergeant, and is sued in his individual and official capacities.

8. Defendant Brian Query was at all relevant times employed by the City as a police officer with the rank of lieutenant, and is sued in his individual and official capacities.

9. Defendants John Does ##4-28, and Jane Doe #2, are employed as police officers, sergeants and/or detectives by the City of New York, or by other law enforcement agencies of the City of New York, and participated directly in the violations of plaintiff's constitutional and common law rights as more fully set forth below.

## JURISDICTION AND VENUE

10. Jurisdiction in this Court is founded upon (i) 28 U.S.C. §§ 1331 and 1343, in that this lawsuit alleges claims based upon the Civil Rights Act of 1871, as amended, codified at 42

U.S.C. § 1983, and (ii) 28 U.S.C. § 1367, in that the Court has supplemental jurisdiction over the state law claims asserted herein.

11. Venue is proper in this district because a substantial portion of the events giving rise to this complaint occurred within this district.

**CONDITIONS PRECEDENT TO THIS ACTION**

12. On or about June 23, 2020, plaintiff filed a Notice of Claim with the Comptroller of the City of New York, which was assigned Claim #2020-PI-014925.

13. On or about December 9, 2020, plaintiff appeared remotely (via ZOOM) for an examination pursuant to General Municipal Law Section 50-h, conducted by LEX Reporting Service, 160 Broadway, New York, New York.

14. More than thirty (30) days have elapsed since plaintiff served her notice of claim and the claim has not been settled or adjusted.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

15. Plaintiff Annabella Ojeda is a twenty-two year old woman who lives in Brooklyn, New York.

16. On June 15, 2020, plaintiff was working her shift at the Shake Shack located at 200 Broadway, New York, New York.

17. At the time she was working as a "Shack trainer" responsible for training new hires and enforcing Shake Shack standards and culture.

18. Sometime prior to 9:00 p.m., a customer placed an order for a milkshake and French fries using a mobile app.

19. That customer was female police officer Precious Cummings, although that fact was not known to any Shake Shack employee at the time.

20. Cummings was on duty at the time she placed the order.

21. Shake Shack employees prepared the milkshake and French fries as they normally do in the regular course of business, and defendant Cummings, who was in uniform and working patrol, picked up the order after it was ready.

22. She complained that her milkshake tasted strange, and in response, the store manager gave her (and other officers with her) coupons for free meals.

23. Sometime prior to 9:00 p.m., Cummings and her fellow officers left the Shake Shack with their orders and coupons.

24. Subsequently, another group of officers arrived at the Shake Shack and placed orders.

25. All of these officers were on duty, working patrol and in uniform.

26. At least one of the second group of officers ordered a vanilla milkshake.

27. Sometime prior to 9:00 p.m., the second group of officers left the Shake Shack with their orders.

28. Either the first or second group of officers included defendants Cummings, Nova-Diaz and Reyes-Estrada, who ordered milkshakes and later claimed falsely that they had been poisoned.

29. Nova-Diaz and Reyes-Estrada, like Cummings, were on duty and in uniform when they ordered their milkshakes and picked them up at the Shake Shack.

30. The Shake Shack closed at 9:00 p.m., and thereafter, all employees including plaintiff Ojeda began to clean up the kitchen for the next day's business.

31. At approximately 9:30 p.m., a number of officers including defendants Zinstein, Query, one or more "John Doe" defendants and Jane Doe #2, arrived at the Shake Shack and declared the area to be a "crime scene."

32. Among the officers who arrived were supervisors, who wore white shirts (including defendants Zinstein and Query), and crime scene detectives.

33. Plaintiff and four other Shake Shack employees were instructed by defendants Zinstein, Query, one or more "John Doe" defendants, and Jane Doe #2 to remain at the premises and were not free to leave.

34. Defendant John Doe #4, a male officer, demanded to see plaintiff's identification, and she complied with the demand.

35. Thereafter, one or more of the defendant officers directed plaintiff and the other Shake Shack employees to be separated, and all of the Shake Shack employees complied with these instructions as well.

36. Defendants Cummings, Nova-Diaz and Reyes-Estrada reported falsely to defendant Sgt. Zinstein that they had been "poisoned with an unknown cleaning agent" and became ill from drinking milkshakes ordered at the Shake Shack on the evening of June 15, 2020.

37. Cummings, Nova-Diaz and Reyes-Estrada made this false report that they were crime victims in the course of their regular duties as police officers.

38. Defendant Zinstein knew or should have known that this report was false, but he transmitted the report to his supervisor, defendant Lt. Query, who called for the NYPD Emergency Services Unit ("ESU") to set up a crime scene at the Shake Shack in Lower Manhattan.

39. Word quickly spread throughout the NYPD that, supposedly, members of the force had been served tainted milkshakes at Shake Shack, and that the milkshakes caused them to become sick.

40. While plaintiff Ojeda and the other four Shake Shack employees were still at the premises, complying in full with the defendant officers' instructions, the Detectives Endowment Association ("DEA") put out a statement on Twitter claiming, falsely, that three police officers became ill after "ingesting a toxic substance believed to be bleach" at an area Shake Shack.

41. Later that night, the DEA through its officers defendants John Does ##24-26, issued the following false statement, based on false information it had received from one or more of the other individual defendants:  "Tonight, three of our brothers in blue were intentionally poisoned by one or more workers at the Shake Shack at 200 Broadway in Manhattan."

42. Because of the DEA's false statements, which were seen by other Shake Shack workers and members of the public, some of whom communicated with Ojeda via text messages, Ojeda and the other four Shake Shack employees all knew at they had been maliciously and falsely accused of poisoning three police officers.

43. Following the DEA's false statement, the hashtag #BoycottShakeShack was trending on Twitter.

44. At no time did any of the defendant officers inform plaintiff why she was detained and could not go home.

45. At approximately 12:00 midnight, plaintiff and the other four Shake Shack employees were escorted out of the restaurant and into a waiting police van which transported them to the First Precinct stationhouse.

46. Plaintiff was detained there for two to three more hours.

47. She was questioned in a harassing manner by two male officers, who are, upon information and belief, P.O. Albert Vitarelli and Det. Lawrence Wien, one of whom asked her whether she thought one of the police officers who placed an order that night was "cute."

48. After about five to ten minutes of questioning, plaintiff and the other workers were driven back to the Shake Shack in a marked police van.

49. They arrived there at approximately 2:35 a.m., on June 16, 2020.

50. Neither plaintiff nor any other Shake Shack employee was ever charged with a crime.

51. No police officer ever became sick after consuming food or beverages at the Shake Shack at 200 Broadway; instead, three of them went to the hospital but were released after showing no symptoms and receiving no treatment for any purported "illness."

52. Afterwards, plaintiff avoided social media because of threatening comments made by members of the public who believed that Shake Shack employees had poisoned police officers intentionally.

53. In addition, the Shake Shack store in Lower Manhattan received threatening phone calls after the incident.

**FIRST CAUSE OF ACTION (False Arrest – 42 U.S.C. § 1983)**

54. Plaintiff repeats and realleges paragraphs 1-53 above, as though fully set forth herein.

55. Defendants Cummings, Nova-Diaz, Reyes-Estrada, Zinstein and Query, all acting under color of state law, confined plaintiff, or directly caused plaintiff to be confined, for approximately five hours on June 15-16, 2020.

56. Plaintiff was conscious of the confinement.

57. Plaintiff did not consent to the confinement.

58. Defendants' confinement of plaintiff was not privileged.

59. Plaintiff has sustained substantial damages because of defendants' unlawful conduct.

60. Plaintiff demands punitive damages against all of the individual defendants personally, given their wanton, malicious, reckless conduct.

### SECOND CAUSE OF ACTION (False Arrest – State Law)

61. Plaintiff repeats and realleges paragraphs 1-60, above, as though fully set forth herein.

62. Defendants City of New York, Cummings, Nova-Diaz, Reyes-Estrada, Zinstein and Query confined plaintiff, or directly caused plaintiff to be confined, for at least five hours on June 15-16, 2020.

63. Plaintiff was conscious of the confinement.

64. Plaintiff did not consent to the confinement.

65. Defendants' confinement of plaintiff was not privileged.

66. All individual defendants named herein were acting in their capacity as City employees, and within the scope of their employment, when they violated plaintiff's rights.

67. The City is liable for the acts of all individual defendants pursuant to the doctrine of respondeat superior.

68. Plaintiff has sustained substantial damages because of defendants' unlawful conduct.

69. Plaintiff demands punitive damages against all of the individual defendants personally, given their wanton, malicious, reckless conduct.

**THIRD CAUSE OF ACTION (Failure to Intervene)**

70. Plaintiff repeats and realleges paragraphs 1-69, above, as though fully set forth herein.

71. None of the individual defendants intervened to stop the unlawful conduct of the officers who falsely reported that they were poisoned, and the officers who arrested or caused the arrest of plaintiff based on that false information.

72. Defendants Cummings, Nova-Diaz, Reyes-Estrada, Zinstein and Query had numerous meaningful opportunities to intervene to prevent the unlawful conduct of the other officers.

73. Plaintiff has sustained substantial damages because of defendants' unlawful conduct.

74. Plaintiff demands punitive damages against all individual defendants personally, given their wanton, malicious, reckless conduct.

WHEREFORE, plaintiff Annabella Ojeda respectfully prays for judgment against the defendants as follows:

(a) Compensatory damages in an amount not less than $150,000;

(b) Punitive damages against the individual defendants personally, in an amount not less than $100,000 for each such defendant found liable;

(c) Attorney's fees in an amount to be determined, pursuant to 42 U.S.C. § 1988; and

    (d)    For such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 28, 2022

HALE & MONICO LLC
The Woolworth Building
233 Broadway, Suite 820
New York, New York 10279

By:        /s/
Arthur G. Larkin, Esq.
(646) 858-1180
alarkin@halemonico.com

TO:    All Counsel (by ECF)

10